UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Laurel W. Brown | § | |
|     Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action H-06-03312 |
| | § | |
| Michael J. Astrue, | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
|     Defendant. | § | |

## OPINION

This appeal from the denial of disability insurance benefits under the Social Security Act is before the court[1] on cross motions for summary judgment. For the reasons expressed below, Brown's motion (Dkt.16) is GRANTED, the Commissioner's motion (Dkt. 15) is DENIED, and the case is remanded for further proceedings consistent with this opinion, pursuant to 42 U.S.C. § 405(g), sentence four.

## Statement of Facts

Laurel Brown applied for disability insurance benefits on August 9, 2004, based on a variety of impairments including heart disease, debilitating fatigue, shortness of breath,

---

[1] Both parties have filed 28 U.S.C. § 636(c) consents to proceed before this magistrate judge. Dkt. Nos. 12-13.

1

dizziness, medication side-effects, and diminished focus and concentration.[2]  She claimed a disability period commencing December 15, 2000 and ending when her coverage expired on December 31, 2005,[3] at which time she was 61 years old.  She previously worked as a medical secretary and office manager.

Her application was denied on September 27, 2004, and again upon reconsideration on March 2, 2005.[4]  She then obtained a hearing before an administrative law judge (ALJ) on February 9, 2006.[5]  The ALJ heard testimony from Brown and a vocation expert and issued a decision denying her application on April 18, 2006.[6]  Brown sought review of that decision before the Appeals Council (hereinafter, "the Council") and submitted new evidence in support of her request.[7]  The Council denied her request on September 8, 2006,[8] thus making the ALJ's decision the final decision of the defendant.  *Sims v. Apfel*, 530 U.S. 103, 107 (2000).

In reviewing Brown's application for benefits, the ALJ followed the usual five-step,

---

[2] TR 22, 52-54.  Except for the parties' pleadings, all documents cited in this opinion are contained in the Social Security Administration's records transcript and will be referred to by their page numbers in that transcript as follows: TR 1, TR 2, TR 3, etcetera.

[3] *Id*.

[4] TR 22.

[5] TR 414-457.

[6] TR 22-28.

[7] TR 16-18.

[8] TR 4-6.

sequential evaluation process prescribed by 20 C.F.R. 404.1520(a). Specifically, the ALJ made the following findings at steps one through four:

1. Brown was not engaged in substantial gainful activity at any time during the claimed period;

2. Brown had severe impairments consisting of: "status post breast cancer, degenerative disk disease, degenerative changes in the AC joint, and recurrent arrhythmias;"

3. Brown did not have a severe medically determinable mental impairment and, with respect to physical condition, did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

4. Brown had the capacity to "lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk about 6 hours in an 8 hour workday, and sit for about 6 hours in an 8 hour workday." Brown's testimony about the severity of her fatigue and other symptoms was rejected as "not entirely credible," and she was found to have the residual functional capacity to do sedentary, skilled work, such as that of her former work as medical secretary and office manager.[9]

Because a conclusion regarding disability status at any step in the process will end the evaluation, the ALJ's evaluation ended at step four when he found that Brown was capable of performing her past work and therefore was not disabled.[10]

In support of her request for review before the Appeals Council,[11] Brown submitted

---

[9] TR 24-27.

[10] TR 27.

[11] TR 16.

3

new evidence on August 11, 2006.[12] This new evidence was a letter from her treating physician, Dr. Garrett Lynch, written on July 21, 2006—three months after the ALJ issued his decision. The Council declined to review her case based on the new evidence because it believed the evidence was "about a later time," and therefore was not material to the disability decision because it did not concern the claimed disability period.[13]

## Standard of Review

This court must affirm the Commissioner's decision if it is supported by substantial evidence, unless improper legal standards were applied. 42 U.S.C. § 402(g). On questions of fact, this court may not re-weigh the evidence, substitute its judgment for that of the defendant, or reverse his decision if a reasonable mind might find that the relevant evidence he relied upon supports his decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). On questions of law, this court may reverse to correct prejudicial legal error. *Id*.

## Analysis

Brown challenges the Commissioner's decision on grounds of legal error as well as lack of substantial evidence. Her main contentions are addressed below.

1.   **Failure to Consider Treating Physician's Post-Hearing Letter**

Brown argues that the Council committed legal error by refusing to consider material new evidence contained in Dr. Lynch's post-hearing letter. In the letter Dr. Lynch stated his

---

[12] TR 7-8.

[13] TR 4-5.

4

belief that Brown "currently suffers from debilitating fatigue."[14] He then referenced numerous abnormal 2006 test results, some from tests provided to the ALJ before he issued his opinion,[15] and some from tests which were conducted afterwards.[16] In two of these tests Dr. Lynch notes that Brown had developed granulomatous disease, a disease previously unmentioned in her medical records. Dr. Lynch does not explain the effect of granulomatous disease, but concludes his letter by stating:

> Further, the patient has developed an anemia of chronic disease, which also causes severe fatigue. These objective findings clearly indicate a medical condition that would reasonably be expected to cause her debilitating fatigue, which would result in inability to sustain full-time regular employment at present and would certainly indicate that this disease process was present prior to December 31, 2005.[17]

Brown argues that the letter constitutes new, material evidence that would have changed the outcome of the hearing, had it been presented to the ALJ. To corroborate this, she refers to the ALJ's decision declaring it "significant" that no doctor had indicated that she could not work.[18] She also asserts that these objective medical findings corroborate her subjective complaints of fatigue, which had been discounted by the ALJ as unsupported by the medical record.

---

[14] TR 7.

[15] TR 395-96 (evidencing Brown's delivery of her March 1, 2006 MRI bone survey results, as examined by Dr. Lynch); *see also* TR 26-27 (containing the ALJ's discussion of Brown's January 2006 MRI of the spine, the records of which can be found at TR 388-389).

[16] TR 7 (referencing tests preformed on April 28, 2006 and July 10, 2006).

[17] *Id.*

[18] TR 27.

Court review of new evidence submitted to the Council after an ALJ's decision is limited in several respects. First, review of a Council denial of a request based on such evidence is limited to determining if the Council applied proper legal standards in making its decision. *Newton v. Apfel*, 209 F.3d 448, 459-460 (5th Cir. 2000). Second, even if the Council failed to apply proper legal standards, the claimant must show prejudice by demonstrating that, had the ALJ been able to consider the new evidence, his decision might have been different. *Ripley v. Chater*, 67 F.3d 552, 557 n. 22 (5th Cir.1995).

The governing legal standard here is supplied by 20 C.F.R. § 404.970(b), which provides:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b); *see also* 20 C.F.R. § 416.1476(b)(1) ("The Appeals Council will consider the evidence in the administrative law judge hearing record and any new and material evidence only if it relates to the period on or before the date of the administrative law judge hearing decision.").

The Council's decision[19] dismissed Dr. Lynch's letter by stating that it was new information about a "later time" than the date Brown was last insured for disability benefits

---

[19] TR 4-5.

(i.e., December 31, 2005). This is tantamount to a determination that the letter did not contain material evidence under § 404.970(b) because, to be material, evidence must relate to "the time period for which benefits were sought and denied." *Sanchez v. Barnhart*, 75 Fed. Appx. 268, 270 (5th Cir. 2003). Like other legal determinations, materiality decisions are subject to reversal if they are in error. *Id.*; *see also Nelson v. Bowen*, 855 F.2d 503, 506 (7th Cir. 1988) (Appeals Council determination that claimant's additional evidence is not material constitutes a legal determination subject to *de novo* review).

The Council's conclusion that Dr. Lynch's letter is immaterial to the disability period does not survive minimal scrutiny. As Brown correctly observes, current medical evidence may properly be used to conduct a retrospective examination of her impairments. *See Likes v. Callahan,* 112 F.3d 189, 191 (5th Cir.1997) ("Retrospective medical diagnoses constitute relevant evidence of pre-expiration disability, and properly corroborated retrospective medical diagnoses can be used to establish disability onset dates."). In *Likes*, two mental health professionals opined that Likes' current post-traumatic stress disorder, first diagnosed in 1991, actually began in 1966 during his Vietnam war duty. The Fifth Circuit found that even though these "retrospective diagnoses" were uncorroborated by contemporaneous medical records, contemporaneous lay evidence did suggest that his PTSD may have developed as early as 1966 and therefore remand was appropriate to reconsider Likes' disability status from 1966 until 1985 — the year his insured status expired. *Id.*; *see also McLendon v. Barnhart*, 184 Fed. Appx. 430, 431 (5th Cir. 2006) (Commissioner may not

refuse to consider retrospective diagnoses, even if uncorroborated by contemporaneous medical reports, so long as there is sufficient contemporaneous evidence to corroborate the diagnosis).

The letter's penultimate sentence should have dispelled any doubt about the retrospective nature of Dr. Lynch's medical opinion:

> These objective findings clearly indicate a medical condition that would reasonably be expected to cause her debilitating fatigue, which would result in inability to sustain regular full time employment at present *and would certainly indicate that this disease process was present prior to December 31, 2005.*[20]

Dr. Lynch opines that, based on abnormal findings from objective medical tests conducted between March and July of 2006, Brown currently suffers from two diseases not previously diagnosed: granulomatous disease and anemia of chronic disease. Dr. Lynch falls short of explicitly declaring that these diseases (as opposed to the "disease process") were actually present during the covered period, but there is no requirement that the retrospective evidence actually contain retrospective *diagnoses*. It is enough that the medical opinion implies or suggests onset during the insured period. *See Jones v. Chater,* 65 F.3d 102, 103-04 (8th Cir. 1995) (mental health diagnoses which "only glancingly address the crucial question of onset date" held sufficient to require remand for additional record-building), *cited with approval by Likes v. Callahan* 112 F.3d 189, 191 (5th Cir. 1997) ("We find the Eighth Circuit's decision persuasive and therefore adopt its rule for this circuit.").

---

[20] TR 7(emphasis supplied).

Dr. Lynch's retrospective medical opinion is corroborated by Brown's well-documented complaints of fatigue and shortness of breath during the claimed period.[21] Moreover, the ALJ expressly found that Brown's medically determinable impairments "could have been reasonably expected to produce [her] alleged symptoms."[22] The only evidence the ALJ found non-credible was Brown's testimony regarding the severity of her symptoms.[23] Dr. Lynch's letter provides new clinical evidence which, in retrospect, buttresses the credibility of Brown's claims while also shedding new light on the contemporaneous medical and lay evidence in Brown's file.

Under § 404.970(b) the Council had a duty to "evaluate the *entire record* including the new and material evidence" because Dr. Lynch's letter related to the claimed period. 20 C.F.R. § 404.970(b) (emphasis added). The Council did not fulfill that duty here due to its threshold determination that Dr. Lynch's letter was immaterial. This was legal error.

Further, Brown has been prejudiced by this error. The burden of establishing prejudice here is relatively low — Brown need only show that, had the ALJ been able to consider the new evidence, his decision *might* have been different. *Ripley v. Chater*, 67 F.3d 552, 557 n. 22 (5th Cir. 1995) (emphasis added). In finding that insufficient clinical findings supported Brown's claims regarding her fatigue and other limitations, the ALJ stated that she

---

[21] *See e.g.* TR 203, 233, 325, 346, 409.

[22] TR 26.

[23] *Id.*

9

had no "significant orthopedic abnormalities" and "no serious dysfunctioning of the bodily organs that would preclude light work."[24] At a minimum, Dr. Lynch's findings undermine this conclusion. Both diseases mentioned in Dr. Lynch's letter could support a finding of past impairment. Anemia of chronic disease is itself the result of chronic underlying disease (such as cancer or chronic bacterial endocarditis),[25] and therefore "develops slowly and is evident only after time."[26] Similarly, granulomatous disease involves the formation of lesions due to the presence of underlying disease and/or chronic infection. *See* Dorland's Illustrated Medical Dictionary, 795-797, 1962 (30th ed. 2003).[27] Without a retrospective examination of Brown's symptoms in light of Dr. Lynch's new diagnoses, the Council's conclusion that this evidence would not have altered the ALJ's decision is baseless speculation.

Accordingly, this case should be remanded to the ALJ so that he may consider this evidence and develop the record in such a way as to fairly evaluate her claim in light of these

---

[24] TR 26.

[25] *See*Medline Plus, Medical Encyclopedia, U.S. National Library of Medicine, available at http://www.nlm.nih. gov/medlineplus/ency/article/000565.htm (last visited November 27, 2007).

[26] *See* Merck Manual of Medical Information, Blood Disorders, Anemia of Chronic Disease (2d ed.2003), available at http://www.merck.com/mmhe /print/sec14 /ch172/ch172e. html (last visited November 27, 2007).

[27] Chronic granulomatous disease is a sometimes fatal, inherited condition that can be diagnosed later in life and often affects the spleen, lymph nodes and "multiple bones." Dr. Lynch's letter does not state that Brown has this form of the disease, but some facts in her records are consistent with that diagnosis and it is not permissible for this court to form conclusions about Dr. Lynch's meaning by guessing.

new findings.

**2.      Failure to Develop the Facts Regarding Brown's Mitral Valve Disorder**

An ALJ's failure to adequately develop the facts requires reversal if a claimant can show that she "could and would have adduced evidence that might have altered the result." *Kane v. Heckler,* 731 F.2d 1216, 1220 (5th Cir. 1984); *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (same). Brown contends that the ALJ erred by not developing the record regarding her mitral valve disorder.

The ALJ found that Brown's 1991 surgery "resolved" her mitral valve regurgitation, but he cites no medical evidence to support that conclusion. He does reference a medical report stating that Brown "successfully underwent a mitral valve repair surgery,"[28] but success in this context does not mean cured. Subsequent medical reports note that she continued to suffer from this condition, and that while surgery did help, her condition after the surgery deteriorated over time.[29] The medical records reflect post-surgery regurgitation,[30] severe enlargement of her left atrial due to the regurgitation,[31] and a state of cardiac decompensation that the court cannot assess absent more information.[32]

Put simply, regardless of whether the ALJ's determination regarding Brown's heart

---

[28] TR 26.

[29] TR 109, 315, 338, 352, 365, 366.

[30] TR 109.

[31] TR 315.

[32] TR 109.

condition is right or not, the court cannot say that substantial evidence supports his findings regarding Brown's mitral valve regurgitation because the evidence cited is simply inconclusive. For example, the ALJ references a September 27, 2004 assessment form submitted by the state agency medical consultant who reviewed Brown's medical records. This form reports that Brown had a severely enlarged left atrium, but that she was still able to achieve 7 metabolic equivalents on her July 2003 stress test, despite having to stop the test due to shortness of breath.[33] Other than noting that Brown had no current reports of chest pain, and that she had a history of coronary problems in addition to current atrial fibrillation, shortness of breath and fatigue, the form does not mention Brown's heart conditions.[34] Moreover, the ALJ fails to address relevant medical evidence pertaining to her heart condition subsequent to the September 2004 assessment form. This evidence demonstrates that:

1. Brown's mitral valve disorder was a "current problem;"

2. she had paresthesias,[35] a positive romberg exam,[36] and was "still" off balance— findings which are consistent with her complaints of dizziness;

---

[33] TR 279.

[34] TR 277-284.

[35] Paresthesia is defined as: "A spontaneous abnormal usually nonpainful sensation (burning, pricking); may be due to lesions of both the central and peripheral nervous systems." *See* MediLexicon, Stedman's Medical Dictionary, available at http://www.medilexicon.com/medicaldictionary.php?t= 65380 (last visited on November 26, 2007).

[36] Rombergism is "the tendency of a patient to fall" when standing with eyes closed and feet close together. *See* Dorland's Illustrated Medical Dictionary, 1366 (25th ed. 1974).

3.        she had chronic atrial fibrillation and irregular pulse rate; and

4.        her anti-arrhythmia medication (Inderal) was increased from two 20 milligram tablets once daily to two 20 milligram tablets twice daily.[37]

The ALJ's decision makes no attempt to reconcile the post-September 2004 report showing that Brown had a "current problem" of mitral valve disorder with his conclusion that her 1991 mitral valve repair surgery "resolved" that condition. Brown argues that, had the ALJ consulted a medical expert to review these records, he would have discovered that she was in a "chronic compensated phase"[38] of the disorder, leading him to find that her mitral valve regurgitation was a severe, medically determinable impairment capable of producing her debilitating symptoms of fatigue, shortness of breath and dizziness. In other words she argues not only that she "could and would have adduced evidence that might have altered the result," but that she did produce such evidence and the ALJ disregarded it. *Kane v. Heckler,* 731 F.2d 1216 at 1220.

This court agrees. The ALJ's conclusion that Brown's mitral valve disorder was "not a significant issue"[39] and was "resolved" by her 1991 surgery[40] is not supported by substantial evidence and consultation with a medical examiner might have altered his decision. Remand

---

[37] TR 408-413.

[38] *See* Dkt. 16, p. 9. n. 2 (explaining that when regurgitation continues to the point of enlarging the left atrium the patient is in the "chronic compensated phase" of the disease and this stage precedes the "chronic decompensated phase" where congestive heart failure can occur).

[39] TR 431.

[40] TR 26.

is appropriate so that the ALJ may fully develop the facts regarding Brown's heart condition in consultation with an appropriate medical expert. *Ripley v. Chater*, 67 F.3d 552, 556 -557; *Kane v. Heckler,* 731 F.2d 1216 at 1220.

### 3.     Failure to Consider Side-Effects of Brown's Medication

Finally, Brown objects to the ALJ's failure to consider whether the side-effects she experienced from her various medications contributed to the existence and severity of her claimed debilitating symptoms. During the claimed period, Brown's medications varied, but included: Inderal, Lanoxin, Lipitor, Coumadin, Glucophage, Rhythmol, Lopressor, Nortriptyline HCL, Actonel, Orudis, Wellbutrin, Ritalin, Adderal, Diamox, and Xanax.[41] For the majority of the claimed period, Brown was taking at least five of these medications at any given time for her heart conditions, high cholesterol, diabetes and depression.[42] Brown contends that some of these medications are known to produce fatigue and shortness of breath as primary side-effects and that this contributed to her inability to work. *See* Dkt. 16, p. 15.

Under SSA regulations, the ALJ has a duty to consider medication side-effects in connection with a claimant's ability to work. *See e.g.* 20 C.R.F. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv); *see also* SSR 96-7p. 1996 WL 374186, 3 (S.S.A) (directing ALJs to consider the "type, dosage, effectiveness, and side effects of any medication the individual

---

[41] TR 25, 63, 98, 322, 330, 393, 399, 408, 411, 425, 432, 449.

[42] *Id.*

takes or has taken to alleviate pain or other symptoms"). Even though Brown listed her medications in her disability application as a cause of fatigue[43] and claimed that she stopped working due to a combination of side-effects and health condition symptoms,[44] the ALJ does not mention medication side-effects in any way. This omission leaves the court in the dark regarding whether the ALJ meaningfully considered this basis for Brown's claimed disabling symptoms. For this final reason, the court cannot say that the ALJ considered the combined effect of Brown's impairments, and therefore cannot conclude that the ALJ's decision is supported by substantial evidence.

## **Conclusion**

Pursuant to 42 U.S.C. § 402(g), sentence four, this case is reversed and remanded for further proceedings consistent with this opinion. On remand the Commissioner is specifically ordered to: (1) consider the medical statements contained in Dr. Lynch's July 2006 letter to the extent that those statements illuminate Brown's condition during the claimed period; (2) fully develop the factual record pertaining to Brown's heart conditions and non-exertional limitations during the claimed period; and (3) consider the impact (if any) of medication side-effects on Brown's ability to work during the claimed period. Given that the ALJ's decision makes clear that many of Brown's impairments could have qualified as "listed impairments" or their equivalents had they been severe enough, this reevaluation

---

[43] TR 63.

[44] TR 450.

should encompass steps 3, 4, and 5 (if necessary) of the sequential analysis.

Signed at Houston, Texas on December 19, 2007.

Stephen Wm Smith
United States Magistrate Judge